NOVEMBER TERM, 1874.

PHELPS, appellant, and MORRISON and others, respondents.

1. Under the statute of frauds of this state, a *bona fide* purchaser acquiring either a legal or equitable title to lands from a grantee, to whom the title has been fraudulently conveyed, will be protected against a judgment subsequently obtained against the fraudulent grantor.

2. In this case lands were conveyed by a husband, mediately to his wife, in fraud of his creditor. The wife, having the title, agreed to sell the lands to, and received the consideration from a *bona fide* purchaser, but did not make a valid title; a creditor then obtained a judgment against the husband and levied on the lands. *Held*, that the equitable title of the purchaser would be preferred and enforced in equity.

3. The statute of frauds, in this respect, discussed and construed.

The opinion of the Chancellor is reported in 9 *C. E. Green* 196.

*Mr. Dixon*, for appellant.

*Mr. C. Parker*, for respondents.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

This is a struggle between a judgment creditor and a person holding an equitable title to land, derived from a *bona fide* purchaser without notice. The facts, in brief, are these: In the month of July, 1871, the complainant, Edward A. Phelps, Jr., became a creditor of Daniel A. Morrison, one of the defendants. Morrison, at that time, was the owner of the premises is dispute, which were certain real estate in Jersey City; and being desirous of securing this property against the risks of his business, conveyed it, through the medium of a third party, to his wife in fee. Subsequently

the wife, on the 15th of April, 1872, executed a contract for the sale of this land, to one Andrew Allendorph, and thereby, for the consideration of $6500, agreed to convey it to him in sixty days; and, accordingly, on the 10th of June following, she made conveyance, in compliance with her agreement. In this conveyance her husband did not join. After this Allendorph conveyed the property to one Bennett, the other defendant; but as this transfer was after bill filed and notice of *lis pendens*, it has no legal effect in the case.

I think the evidence must be taken to show conclusively that Allendorph purchased in good faith, and paid the consideration money when he got his conveyance, and that there was nothing in the transaction, or in the state of the title which he sought to acquire, which ought to have excited his suspicions or put him on inquiry. I shall assume, therefore, in applying the law to the facts of the case, that he was a *bona fide* purchaser, without notice of the rights of the complainant.

On the day of the execution of the conveyance just mentioned—that is, on the 10th of June, 1872—the complainant obtained a judgment, in the Supreme Court of this state, against the defendant, Daniel A. Morrison. And it is now claimed that, even on the assumption that the purchase by the defendant Allendorph was in good faith, this judgment constitutes a paramount lien on the property in question. The groundwork of this contention is, that Daniel A. Morrison, being in debt to the complainant, made a voluntary transfer of the title to the premises to his wife; that the legal title is still in the wife, her deed being invalid on account of the nonjoinder of her husband in its execution, and that, consequently, Allendorph, her grantee, acquired nothing but a mere equity, which cannot prevail against the legal force of the judgment against the husband.

It is certain that most of the propositions embraced in this argumentative series are indisputable. The conveyance by the husband to the wife, with the intent to place the land beyond the hazard of his business, could not stand, for a mo-

ment, against the assaults of the complainant, he being a creditor at the time of such arrangement. Such a transaction is, in law, regarded as a fraud, and the conveyance declared to be void by the express language of the statute for the prevention of frauds and perjuries. Such a title could have been vacated by force of the judgment of the complainant, either in a court of law or in equity, so long as the title, legal or equitable, remained in the wife, she being looked upon as a fraudulent grantee. In the absence of extraneous conditions, the complainant in the present case, could then have proceeded under his judgment against the husband, to sell the land, the title to which had thus been attempted to be transferred to the wife, and the purchaser at such sale would have acquired all the right in the premises which had been vested in the husband at the time he executed the forbidden conveyance. That such is the effect of the statute, has been often judicially declared in this state and elsewhere, and, therefore, requires neither elucidation by argument, nor authentication by the citation of authorities. Nor can the other proposition above stated, be considered as in any wise a debatable question. · The present statutory law of this state does not permit, under ordinary circumstances, a married woman to execute a conveyance of her lands, unless such act be done with the co-operation of her husband. To this point, therefore, it is entirely clear that the argument of the counsel of the complainant is rested on solid ground. From these premises, indisputably tenable, the corollary is drawn that the legal propositions just referred to and declared to be correct, remain intact, and continue unaffected by the fact that an equitable right to these lands passed to Allendorph, he having purchased and paid his money in good faith. The point thus presented is not free from difficulty, and in the process of its solution embraces a consideration of the pertinent principles of equity, as modified by the positive rules of the statutable law of the state.

Upon the usual principles of equity, as administered in England and in this country, no one can doubt that the lien of a judgment at law upon lands, will not prevail against the

Phelps v. Morrison.

equity of a purchaser, who, before the rendition of such judgment, has, in good faith and without notice of anything wrong in the affair, paid his money. Under such circumstances, it has often been declared that the equitable will overcome the legal right. The reason of this rule was stated in the early case of *Brace* v. *Duchess of Marlborough*, 2 *P. Wms.* 491, and has been many times reiterated, and was to the effect that there was a higher equity in favor of one who advances his money, by way of purchase or mortgage, in reliance upon a specific piece of property, than there is on the part of a general creditor who looks for his security to the entire estate of his debtor without having in his eye, when the debt is incurred, any specific part of it. Whatever may be thought of the validity of the reason thus announced, it is certain that the doctrine founded upon it is established by a long line of decisions of such weight and authority that no court would deem it open to discussion. Many of the adjudications referred to are collected in the American annotations appended to the case of *Basset* v. *Norworthy, in* 2 *Leading Cases in Equity, page* 108, (*third Am. ed.*) The proposition in question is stated in this learned note in these words : " It is, however, well settled that the acquisition of such a lien, (that is a lien by judgment,) although without notice, is not to be regarded in the light of a purchase, or as entitling the creditor to a preference over prior equities or unrecorded conveyances." The case of *Whitworth* v. *Gaugain,* 3 *Hare* 416, is also strikingly evincive of the great force and scope of the rule, for it was there adjudged that an equitable mortgagee of lands was entitled in equity to enforce his charge in priority to a creditor of the mortgagor, who, without notice of the equitable mortgage, had, subsequently thereto, recovered judgment against the mortgagor and obtained actual possession of the lands by writ of elegit and attornment of the tenants. It is obvious that under the operation of this rule, if it prevailed in its full vigor, a purchaser who had innocently paid his money, relying on a promise that the land purchased would be conveyed to him, could enforce his equi-

table right to such land, as against any creditor subsequently obtaining a judgment lien thereon against the legal owner. The principle of the rule seems to be, that in such a situation of affairs, a court of equity will regard the title as vested by the agreement in the purchaser, on the ground that in that tribunal, whatever in conscience has been agreed to be done and ought to have been done, is regarded as having been actually done. On such a theory, of course there would be no title left in the vendor upon which the subsequent judgment against him could operate.

But it is evident, I think, that this equitable rule does not prevail, to its entire extent, in this state. Its efficacy has been very sensibly impaired, and its operation contracted within narrow bounds, by the provisions of the statutes which give a preference to judgments over unrecorded conveyances and mortgages. These enactments, by necessary implication, revoke, in a great degree, the rule in question, for it would seem quite absurd to hold, that the rights of a purchaser having taken a deed, but having failed to record it within the statutory period, shall be subordinate to the subsequent judgment, but that if he omits to take a conveyance, his equitable title will be paramount to such legal lien. Our act relating to the registration of mortgages, enacts that a mortgage shall "be void and of no effect against a subsequent judgment creditor," unless such mortgage shall be acknowledged or proved, and recorded or lodged for that purpose, &c., "at or before the time of entering such judgment;" and the act respecting conveyances contains a similar regulation with regard to such instruments, with the distinction that it gives them full effect, if recorded within fifteen days "after the time of signing, sealing, and delivering the same." In view of this system, it is obvious that the rule that the mere equitable title shall prevail over the lien of the judgment creditor subsequently acquired, must be considered as, in the main, abrogated. The legislative declaration, that the judgment shall have priority over the equitable right of the purchaser, even when such right has been evidenced and

corroborated by the transfer of the legal title, must, upon very plain grounds of right reason, have the effect of placing under the same subjection, the mere equity of the purchaser which is unattended by a conveyance. The plain purpose of the statute is to make, in the absence of registration, the legal right of the purchaser subordinate to the claim of the judgment creditor ; and as such legal right of the purchaser comprises and wholly absorbs his equitable right, it follows, as an inevitable conclusion, that the latter must stand in the same position of subordination. I have no doubt that this is the effect of these statutes upon the equitable rule under consideration. And this is the construction which has been put in other jurisdictions upon statutes tending to the same purpose. Among cases of this class, the following are illustrative decisions : *Davidson* v. *Cowen*, 1 *Devereux Eq.* 474 ; *Coffin* v. *Ray*, 1 *Metc.* 212 ; *Jaques* v. *Weeks*, 7 *Watts* 261 ; *Semple* v. *Burd*, 7 *S. & R.* 286.

The foregoing examination of the general rule in question, as enforced in courts of equity, through the change impressed upon it by the statutes of this state, leads us to this result : that if the judgment of the complainant is a lien at law, as is claimed, upon the premises involved in the controversy, such lien cannot be divested by the naked equitable right of the defendant, Allendorph. This will be at once evident, when it is remembered that such result would not have followed if this defendant had taken an actual legal conveyance, and had omitted to comply with the requisition of the statute exacting the recording of such conveyance. This seems to me so plain, that the only matter for consideration which appears at this point to arise, is, whether this judgment, under the force of the circumstances presented, has any effect, so as to lay a legal lien upon this land.

I have already stated that the judgment is against the husband, and that the legal title to the property is now in his wife, as his fraudulent grantee. If the case stopped at this point, there would be no question with respect to the lien of the judgment. It would clearly bind the land so that it could

be sold under it. But this effect does not proceed from the principles of the common law, for, under that system, the title being out of the judgment debtor could not be reached in the hands of his grantee, except by proceedings in equity. That the judgment against a debtor can be levied against lands aliened by him in fraud of his creditors prior to the rendition of such judgment, is an effect due exclusively to the operation of the second section of the statute for the prevention of frauds, which declares that every such conveyance shall " be clearly and utterly void, frustrate, and of no effect." The statute annulling the transfer of the title, the judgment becomes attached to the land as completely as though the fraudulent conveyance had not been made. Does this statutory rescission of the fraudulent conveyance occur in the present case ?

My consideration of the subject has led me to the conclusion that it does not. I think, as between the complainant, the judgment creditor, and Allendorph, the equitable purchaser from the fraudulent grantee, the section of the statute just referred to is wholly inoperative. By the sixth section of the act, the rights of the *bona fide* purchaser are protected and preserved by being withdrawn wholly from the statutory operation. This clause, in substance, declares that the act shall not extend to, or be construed so as to impeach or make void, any conveyance made upon good consideration, and *bona fide*, to any person without notice or knowledge of the fraud tainting the transaction. This language is very comprehensive, and appears to embrace the equitable transfer to the defendant, Allendorph, from the wife of the judgment debtor. It is true, that in construing a similar provision in the statute law of New York, Chancellor Kent, in the case of *Roberts* v. *Anderson*, 3 *Johns. Ch. R.* 371, was of opinion that the clause under consideration did not protect a purchaser from the fraudulent grantee, but only such purchaser when he derived title directly from the fraudulent debtor himself. But this judgment was afterwards reversed in the Court of Errors, and a contrary construction

was established.   In this latter court, the opinion expressed
by Chief Justice Spencer, is characterized by nice discrimina-
tion and accurate reasoning, and places the subject on highly
practical grounds; the inference that he draws being that the
provision validates the title of the *bona fide* purchaser, whether
such title has been taken immediately from the fraudulent
debtor or more remotely from the grantee of such debtor.
And this interpretation seems to me wholly consistent with
both the spirit and language of the section construed.   The
terms used are general, and no reason appears why the design
of the law maker should not be held to comprehend the class
of affairs to which the present case belongs.   Why should
not the *bona fide* purchaser in the second degree in the line of
conveyance from the debtor be protected, as well as the pur-
chaser who stands in the first degree?   The contention of
Chancellor Kent, in the case just cited, that inasmuch as the
second section of the act pronounces the fraudulent convey-
ance to be actually void, and that consequently no title passes
to the grantee of the debtor, and that on this account he can
transmit none, is manifestly fallacious, because the section re-
ferred to does not have the effect attributed to it.   That
section, taken in connection with section sixth, does not de-
clare the fraudulent conveyance frustrate in all cases; but on
the contrary, permits it to stand good in all respects, in favor
of a *bona fide* purchaser.   I think, under a reasonable con-
struction, this was the effect of the clause in question as it
stood originally on the English statute book, but that, at all
events, such must be the reading of our own act.   Our
statute was framed by Judge Paterson, and that part which
relates to fraudulent conveyances is mainly composed of the
statutes of 13th and 27th *Elizabeth*.   Each of these original
acts has a proviso annexed to it, and these provisos are con-
solidated into the sixth section of the New Jersey statute.
The first statute, being the 13th of *Elizabeth*, was designed
to protect creditors against fraudulent conveyances; the latter
statute, the 27th of *Elizabeth*, to protect purchasers against
similar frauds.   The former act, with respect to the question

in hand, does not appear to have been construed by the English courts; but in that country the law is settled, that by force of the latter act an innocent purchaser for a valuable consideration, from a fraudulent grantee, will be preferred to a subsequent purchaser from the grantor. This being the legal interpretation of the one statute, I have failed to see why the other is not to be read in the same sense. The language of the clauses in the two acts which annul the fraudulent conveyance, is identical; and the only difference on this subject, between the acts, seems to be in the terms of the provisos creating an exception in favor of *bona fide* purchasers. It would seem, therefore, that if the statutes can be construed differently, such discrimination must arise from the variation in the language of these provisos. But the reason for discrimination does not exist in the interpretation of our own act, because the provisos are blended, the more comprehensive terms being retained. My conclusion, consequently, is that already stated, that the statute for the prevention of frauds does not operate so as to annul or affect the title of the fraudulent grantee as against a *bona fide* purchaser from such grantee, and that a purchaser is within the immunity of the act if he has acquired either a legal or equitable title, and that under such conditions, a judgment against the debtor will not be a lien on the land conveyed. It is well to remark, that if a sale should take place under such judgment, a purchaser at such sale, without notice of equities existing in favor of parties disconnected with the fraudulent transaction, would stand, from manifest considerations, upon a different ground from that occupied by a judgment creditor. The present decree is right in holding that the title transmitted to Allendorph was not affected by the judgment in question.

The next objection arises out of that part of the decree which converts the equitable title to the fee, residing in the defendant, Allendorph, into a mortgage, and charging it as a lien upon the land in priority to the judgment of the complainant.

It is insisted that, under the bill and pleadings in this case,

there is no warrant in the practice of courts of equity for such a decree charging the property, by way of mortgage, with the amount of money paid by Allendorph. I have been unable to find any precedent, nor do I know of any principle, which would seem to justify a decree of this character. This defendant, Allendorph, is adjudged to be a *bona fide* purchaser; by what course of reasoning is it, then, that he is to be converted into a mortgagee? If he had bought the land in good faith, and it is not affected by the judgment of the complainant, I do not see how it, or any part of it, is to be withheld from him. Suppose the land should not bring the amount paid, is the wife, from whom he derives title, to be charged with the deficiency, or is this defendant to lose it? The wife is a mere voluntary grantee, and is guilty, not of a moral, but merely of a legal fraud; and it certainly may operate as a great injustice to her if the sale which she has made can be broken up, and the transaction turned into a loan to be secured on the land. The difficulty in considering the sale and transfer of title good for some purposes, and to alter its essential character for other purposes, seems to be insuperable. The decision in *Pentz* v. *Simonson*, 2 *Beas.* 232, rests upon correct principles, but it bears no analogy to the present case. There the bill was against the wife to compel her to execute a conveyance according to the agreement, she having received payment, in part, of the consideration money. The married woman refused to comply with her agreement, and the court decided that she could not be compelled to do so, but charged her separate estate with the moneys received. Would the court have done this if the married woman had insisted on her bargain, and had been willing to carry it into effect? And yet, this is what the married defendant in the present case does. In the reported case the court refused the complainant the benefit of his agreement to purchase because it had no power to enforce it; in the present case the court can enforce the agreement. It seems to me clear that the cases do not, in principle, even approach each other.

But still, although I am constrained to think the decree

in this particular erroneous, it does not seem to me that the complainant is in a position to call it in question. It does not appear, nor is it to be inferred, that he is injured by the error. Indeed, it looks as though, of necessity, it must redound to his benefit. If the decree had given the premises in fee to the defendant, Allendorph, they would at once have been placed out of the reach of the complainant; as it is, his judgment remains as the second encumbrance upon them. Nor do I think that the complainant can rightfully ask, in order to the validation of this decree against him, that a cross-bill shall be filed. Such an objection, it is probable, might have been successfully urged in behalf of Mrs. Morrison, but the complainant has prayed for a sale of the premises, and the Chancellor, of necessity, must adjust the order of the encumbrances upon it. Under the statute, no person but a party aggrieved by the decree can appeal from it to this court, and in neither of the matters specified does the complainant stand in that situation.

Upon the whole case, therefore, I am of opinion that the decree appealed from should be affirmed, with costs.

Decree affirmed by the following vote:

For affirmance—BEASLEY, C. J., DALRIMPLE, DEPUE, GREEN, LILLY, SCUDDER, WOODHULL.   7.

For reversal—BEDLE.