J. PERCY BRINTON *

v.

ENOCH B. SCULL and R. BARTINE JOHNSON.

On bill, answer and proofs.

The bill in this case is filed to compel the specific performance of an agreement claimed to have been made by the defendant Scull, through his agents, Porter & Crowley, with the complainant, on the 27th of September, 1895, for the sale of a tract of land situate on the east side of Chelsea avenue, and designated as No. 11 in block 12 of the Chelsea Beach Company, as shown on that company's land on file in the Atlantic county clerk's office. The complainant alleges that Scull had employed Messrs. Porter & Crowley to act as his agents for the sale of this lot; that he fixed the price at $2,000, prescribed the terms of payment and directed them to make the sale; that on the 27th day of September, 1895, the complainant agreed with Scull, through Porter & Crowley, acting as his agents, for the purchase of this lot, by a contract in the form of a receipt, which is marked "Exhibit C 1," and is in words and figures as follows:

---

* This opinion is referred to at page 489 ante.—REP.

"ATLANTIC CITY, N. J., Sept. 27th '95.

"Received of J. Percey Brinton the sum of twenty-five dollars ($25.00) on act. of the purchase price of two thousand Dollars ($2,000.00) on Lot no Eleven (11) in section No twelve (12) as per plan of Chelsea in Atlantic City said Lot situate on the East side Chelsea Ave. Beginning at a point two hundred and seventy-five feet south of Pacific ave. the side of the aforesaid Lot being (50 x 125) the property of E. B. Scull which Lot is this day sold by us as Agents for the said E. B. Scull to the said J. Percey Brinton for the said Price of (2,000) two thousand Dollars to be paid all Cash if desired or one-half to remain on purchase money mortgage settlement to take place within (20) days and apportionment to day of settlement.

"PORTER & CROWLEY, adts.

"Witness
   "H. S. SCULL."

Endorsed on the contract is the following certificate:

"Recd. Oct. 1st., A. D. 1895 and recorded in the Clerk's Office of Atlantic County at Mays Landing in agreement book No. 3 of the said county on page 211.

"LEWIS EVANS, Clerk."

On the same day that he got this agreement the complainant paid Porter & Crowley $25 in cash on account of the purchase-money of the lot, and on the next day Porter & Crowley notified Scull of the contract thus made. Shortly after the contract was made the complainant tendered performance of it to Scull by offering to pay to him the balance of the purchase-money, which he refused to accept, stating as his reason that he had advanced the price of the lot prior to the time of the sale by Porter & Crowley to the complainant, but had neglected to notify them of his intention to raise the price.

Scull refused to convey to the complainant, but on the 4th of December, 1895, he did convey the lot in question to the defendant E. Bartine Johnson by deed dated November 16th, 1895. At the time when this deed was made, Johnson had full knowledge of the outstanding unperformed prior contract to convey to the complainant, and with this knowledge Johnson accepted the deed from Scull to himself. The complainant claims that this conveyance was a subterfuge by which Scull hoped to get the title into the hands of a stranger and thus defeat the complain-

ant's contract, and he alleges that Johnson ·is not a *bona fide*
· purchaser &c.

The defendants, Scull and Johnson, both file answers.   Scull
admits that he owned the land, but denies that he ever in any
way appointed Porter & Crowley his agents for the sale of it.
He denies giving them any authority to make the contract with
the complainant, declares that he had no notice of it until a day
or two after it had been executed, and that on receiving notice
of it he repudiated it, and also the claim of Porter & Crowley
of any right to make it as his agents.·  He admits that Porter
& Crowley made known to him the making of the agreement
after it had been made, and that the complainant tendered him-
self ready to pay the balance of the purchase-money, and that he
refused to take it; and that he stated that he had advanced the
price as above narrated.   He avers that the conveyance to John-
son was no subterfuge, but a sale in good faith ; that he had put
the sale of the lot in the hands· of I. G. Adams and also of A.
H. Phillips & Company, at the price of $2,000, and he states
that all he said to Porter & Crowley, touching the matter, was
in reply to an inquiry of Crowley, to whom he answered that he
was the owner of the lot and the price was $2,000.   He says he
heard nothing further from Crowley until after the agreement
with the complainant was .made.   In the meanwhile he says he
had notified Adams & Company and Phillips & Company that
he had advanced the price of the lot to $2,500, and immediately
upon receiving word that Porter & Crowley had sold the lot for
$2,000, he informed them that the price was $2,500; that a few
days afterwards the complainant requested him to convey the
lot for the $2,000, which he refused to do, and that the sale to
the defendant Johnson was made by Adams & Company, who
had received $100 on account and given a receipt therefor before
the complainant knew that Johnson desired to purchase it.

The defendant Johnson answers by the same solicitor as the
defendant Scull, and claims that he is a *bona fide* purchaser for
value; that he had paid $100 on account, and received an agree-
ment of sale from Adams & Company, as agents for Scull, two·
or three days before he had any word from Porter & Crowley

that they had sold it to the complainant, and that this information was the first knowledge that he had of any transaction between Scull, Porter & Crowley and the complainant.

*Mr. J. H. Brinton* (of the Philadelphia bar), and *Mr. Lindley M. Garrison,* for the complainant.

*Mr. Clarence L. Cole* and *Mr. Joseph Thompson,* for the defendants.

GREY, V. C.

In so far as the bill charges the conveyance to Johnson to have been a subterfuge and a fraud, there has been no proof submitted upon the part of the complainant which tends to establish this charge.

There seems to be no dispute that the complainant entered into the bargain for the purchase of the lot with Porter & Crowley, believing them to be the agents of the defendant Scull, in good faith, and that he received the above memorandum of the sale and made a payment on account of the purchase-money and tendered to the defendant Scull the residue of it.

The form of the agreement is in substance the same as a contract made by an agent for sale of lands, of which specific performance was decreed upon in *Reynolds* v. *O'Neil, 11 C. E. Gr. 224.* See, also, *Lewis* v. *Reichey, 12 C. E. Gr. 240.*

The defendant Johnson appears to have made his bargain with Adams & Company for the purchase of the lot, as agents of Scull, in ignorance, at the time he made the bargain, of the previous contract made by Porter & Crowley, as agents of Scull, with the complainant. This contract of the defendant Johnson was marked "Exhibit D 1," and is in the words and figures as follows:

"November 16th, 1895.

"Received of E. Bartine Johnson the sum of One Hundred Dollars to secure and on account of purchase of lot No. 11 block 12 on map of the Chelsea Beach Company, situate on the easterly side of Chelsea Avenue and beginning two hundred and seventy five feet southerly of Pacific Avenue, and extending southerly fifty feet, and of that width extending eastwardly at right angles

with Chelsea avenue and parallel with Pacific avenue one hundred and twenty-five feet.  Price of said lot Two thousand five hundred Dollars ; Four hundred Dollars to be paid within thirty days from the date of this agreement and the balance Two thousand Dollars to be secured by a purchase money mortgage payable at any time within three years.  Papers to be dated November 16th, 1895.  Taxes to be pro-rated.

"E. B. Scull."

On this contract Johnson had actually paid $100 on account before he heard of the complainant's contract; but before he paid any further purchase-money or took his deed, he was fully notified of the previous contract to convey the lot to the complainant and of the complainant's assertion of his claim to the lot under that contract, and Johnson thereafter proceeded with the performance of his contract with actual notice of the complainant's prior equity.

The incidental facts which lead to the foregoing conclusions are not disputed and appear in the proofs offered .by both parties.

The essential difference between the parties lies in the broad denial of the defendant Scull, the owner of the lot, that he ever in any way authorized Porter & Crowley to act as his agents for the sale of the lot in question.  This denial is explicit and unqualified as set out in the answer, and the defendant Scull declares that he repudiated the contract made by Porter & Crowley with the complainant as soon as he heard of it.

An examination of the testimony shows that the only witnesses who testified to this point are the real estate agents, Porter & Crowley, and the defendant Scull.  Mr. Scull's letters, however, to Messrs. Porter & Crowley, and to the complainant, immediately after the happening of these transactions, throw great light upon this disputed question.  Crowley testifies that about April 11th, 1895, he called upon Mr. Scull about the sale of some lots of land owned by him, including the lot in question as one, and that Scull, at his invitation, named the price at which he would sell these lots, and agreed that Porter & Crowley might sell any of his lots at the price prescribed by him, and that he would allow them the usual commission of two per cent. on the price at which the sale should be made. Mr. Scull admits that Crowley asked him if he owned this lot,

and the price he asked for it, and that he told him $2,000 was the price, but says he has no recollection of giving prices on the other properties. Mr. Scull, though examined relative to the conversation, does not deny Crowley's statement that he, Scull, assented to the sale of the lot by Crowley, at the price he had named, and when asked what else Crowley said, Scull replied, " I don't recollect of anything particular."

Mr. Scull, it is to be observed, does not contradict the statement of Crowley that he arranged that Porter & Crowley might sell his lot and that he would pay them a commission for effecting the sale. Indeed, Mr. Scull, in substance, admits this, for, when asked relative to the only conversation which he says he had with Crowley before the sale, whether he authorized him to make a sale of the lot, he replied, " Not particularly, but if Mr. Crowley had made a sale of the property before the advance in price, why I should have accepted the sale, if the other conditions of the sale were agreeable." The arrangement of Mr. Scull with Porter & Crowley that they might sell his lot, was not questioned by him at any time while the transactions were being carried on, upon the ground that they had no power to sell. Scull himself testified that he would have accepted any sale made by them if they had secured for him the higher price he demanded.

In August, 1895, Crowley said that he asked Scull if there was any change in the price, and that Scull told him there was not. Mr. Scull admits this to be in substance a true statement of the conversation, and says that the next thing " he [Crowley] came to me and said he had sold it."

Another interview between Scull and both Porter & Crowley was had about September 25th, 1895, when Crowley said Scull told him there was no change in the Chelsea avenue lot; that he would take $2,000, and if it would help the sale, would let $1,500 remain on mortgage if necessary, whatever would suit the purchaser, and speaking to Crowley said, " You had not ought to have any trouble to sell that lot at that price, as it is cheap." Porter, who was present, confirms this statement, further adding that Scull said to them, " Why haven't you sold that

Brinton v. Scull.

piece of ground of mine on Chelsea avenue there." Porter answered, "We have a purchaser in view for it," and Scull replied, "He hoped he would sell it—he was anxious to sell it." When the substance of this testimony was restated to Mr. Scull, and he was asked if it was true, he merely replied, "It is not." So it is difficult to understand whether Mr. Scull denies the meeting with the parties, or the part of the conversation restated to him, but taking this denial to have been made in its broadest sense, it puts Mr. Scull in direct contradiction of both Porter & Crowley, so that the credibility of one party or the other must be passed upon as hereinafter considered. Previous to the time when this conversation took place, the complainant had opened negotiations with Porter & Crowley for the purchase of the lot. On September 27th, 1895, two days after this interview, the complainant agreed to the purchase, paid $25 on account of the purchase-money, and took from Porter & Crowley the receipt, "Exhibit C 1," which is the above memorandum in writing of the sale. The next morning, September 28th, Mr. Crowley informed Mr. Scull that he had sold the lot for $2,000 to Mr. Brinton, the complainant. Scull told him he had forgotten to notify him that he had changed the price of the lot to $2,500, but that as Brinton had paid $25 on account, he might have it for $2,250. Crowley then asked Scull to meet Brinton to explain this change increasing the price, which Scull declined to do, but said he was willing to write a note, explaining that Crowley had the lot for sale, but that Scull had changed the price. Scull declares that the object of this note was to assure Brinton that it was he, Scull, and not Crowley, who had changed the price.

In this conversation between Crowley and Scull, when the sale was reported, it is plainly manifest that Crowley was asserting to Scull himself not only that Scull had previously given to Porter & Crowley authority, as his agents, to sell the lot at a named price, but that they had actually exercised this authority by making a contract of sale at that price and taking from the purchaser a part of the purchase-money. Now, if these real estate agents had in fact assumed an agency for Scull that had no existence by his authority, the entire natural thing for Scull

48

Brinton v. Scull.

to have done, when this was first brought to his knowledge, would have been to have denied their right to act for him. Mr. Scull evidently perceived the force of this situation, for in his answer he makes a direct allegation that " upon receiving notice that such an agreement had been made he immediately and unqualifiedly repudiated the same and the authority of Porter & Crowley to execute the same as his agents." But when Mr. Scull was giving his evidence he did not testify that at the time he received notice of the making of the agreement by Porter & Crowley he denied their power as his agents to make the sale. His own testimony shows that when Crowley notified him of the agreement with the complainant he recognized their right as his agents to make the sale, if only they had obtained the increase in the price which he wanted, but of which he had neglected to notify them. While Crowley was in the office the letter of September 28th, 1895, addressed to Porter & Crowley, was written. This letter is dated September 28th, 1895, and has been marked " Exhibit C 2." It is addressed to Porter & Crowley, and in this Mr. Scull explains that he had raised the price to $2,500, and he states in terms that he " had *notified the other agents*, but neglected to notify you." Here is Mr. Scull's own definition of the relation which Porter & Crowley bore to him touching this lot. He speaks of them as agents whom he had neglected to notify of the increase in the price, and this letter was written by his own clerk in his own office, was handed to him by the clerk, was by him handed to Crowley at the time when he was first notified of the agreement made with the complainant, and also at a period in the transaction when his self-interest had not yet been aroused to deny his authorization of Messrs. Porter & Crowley. What was said and done at this time by Mr. Scull is much more truly indicative of his relation to Messrs. Porter & Crowley than are his declarations and denials *post litem motam*. Mr. Scull, while giving his testimony, denied that " Exhibit C 2 " is the letter which he gave Crowley on being notified of the agreement with the complainant, and declared that the real letter then given was written by Crowley and signed by him (Scull). Miss Scull, who was

her father's clerk at the time, was, as her father and Crowley both testify, present in the office when Crowley came there. Miss Scull was a witness as to this very letter, but she did not testify, in support of her father's evidence, that Crowley wrote a letter which her father signed. When shown this letter, "Exhibit C 2," Miss Scull denied that she wrote it, but she also denied that she wrote another letter, "Exhibit C 5," which her father swears she did write, and upon a comparison of the two letters each with the other, and both with the book entries which are admitted to be in Miss Scull's handwriting, I am compelled to believe that the letter, "Exhibit C 2," was, in fact, written by Miss Scull, as her father's clerk, and given to Crowley by Mr. Scull, under the circumstances detailed in Mr. Crowley's testimony.

Mr. Scull's manner in giving his testimony, and his denials of self-evident facts, have led me to hesitate to accept his statements where they are in direct contradiction of the testimony of other witnesses and of documentary proofs.

None of the language used while the parties were acting indicates that Porter & Crowley were deemed by Scull to be possible purchasers themselves, or that Scull authorized them, as brokers, to find a possible purchaser and bring him to Mr. Scull for acceptance. Not only were Porter & Crowley given by Mr. Scull the price, the terms of payment and other incidents necessary to enable them to sell the lot for him, but beside this Mr. Scull asked them why they had not sold the lot for him, and he was told they were about to sell it, and afterwards that they had sold it. He designated them as his "agents" in the letter, taking upon himself the responsibility for the increased price, and on the stand, while under oath, admitted that he would have recognized their sale if the higher price had been obtained by them. As above shown, his objection was never that they were not his agents, but that they, as his agents, had not obtained for him the higher price he wanted for the lot. His denial of their authority to act as his agents is an afterthought, adopted to protect his more profitable bargain made with Johnson after notice of the agreement with the complainant.

Considering all the proofs offered, I think the complainant has shown that the defendant Scull had employed Porter & Crowley as his agents to make sale of the lot.

Accepting the relation of Scull and Porter & Crowley to have been that of principal and agent, as above shown, Mr. Scull had empowered them to sell this lot at a named price and upon specified terms. Before they had any different instructions they had, as Scull's agents, made a contract in writing, binding upon him, in accordance with the direction given them. It is no answer to excuse performance to say he had, unknown to his agents and to the complainant, who contracted with them, raised the price of the lot but had forgotten to give the agents notice of the fact.

So far as the defendant Scull is concerned, I think the complainant is entitled to a decree for specific performance upon complying with the terms of the contract of September 27th, 1895. The equitable effect of the agreement with the complainant was to make the complainant the equitable owner of the lands; Mr. Scull became the trustee holding the legal title for the complainant's benefit. *Hoagland* v. *Latourette, 1 Gr. Ch. 254; Haughwout* v. *Murphy, 7 C. E. Gr. 546.*

The title to the lot is presently in the defendant Johnson. There is no proof to show knowledge or even warning brought to Johnson of the complainant's contract of purchase, previous to the making by Johnson of his preliminary agreement of November 16th, 1885, with Scull, and his payment of $100 on account.

The complainant's memorandum of sale was indeed recorded in the Atlantic county clerk's office, on October 1st, 1895, about a month and a half before Johnson obtained his memorandum of the sale on November 16th from the defendants' other agents, I. G. Adams & Company, but as the complainant's memorandum was neither acknowledged nor proved, there was no authority to record it, and the record of it, when made, was wholly ineffectual as constructive notice to the defendant Johnson of the sale to the complainant. The record was not offered by the complainant to prove constructive notice, but as a link in the chain

Brinton v. Scull.

of proof which brought to Johnson's actual knowledge of the complainant's prior purchase, before Johnson had taken his deed or made any payment beyond the $100 paid on November 16th. Johnson testifies that notice of the complainant's purchase was brought to him by a boy about two days after he had received his own agreement and paid $100 down. · This must have been about November 18th. Because of this information, Johnson went to Mr. Rogers, of I. G. Adams & Company, and had a search made, which disclosed the complainant's agreement, so that, although the record and search were inefficient as constructive notice, the copy of the complainant's agreement was shown to Mr. Johnson, thus giving him actual notice of the complainant's prior equity, before he had paid any more than the $100, or had taken his deed.

The rule is well established that a purchaser with notice of a prior equity, superior to the rights of his grantor, takes the place of the grantor, and is bound to do that which he was bound in equity to do. Such a purchaser can be compelled specifically to perform the agreement by conveying the land in the same manner and to the same extent as the grantor would have been compelled to do had he retained the legal title. *Young* v. *Young, 18 Stew. Eq. 40, 41; Haughwout* v. *Murphy, 7 C. E. Gr. 547.*

And to be a *bona fide* purchaser without notice, the defendant must not only have agreed to purchase without notice of the complainant's previous agreement, but he must also have actually paid the purchase-money and taken his deed without such notice. *Dean* v. *Anderson, 7 Stew. Eq. 503.*

If he has paid part only before notice, he will be protected only to the extent of his actual payment. *Haughwout* v. *Murphy, 7 C. E. Gr. 548.*

As against the defendant E. Bartine Johnson, the complainant is entitled to specific performance of the contract of September 27th, 1895, when he shall have paid to the defendant Johnson the $100 which had been by him expended before he had notice of this prior contract outstanding in favor of the complainant. This $100 the complainant is entitled to deduct

Brinton v. Scull.

from the balance of the purchase-money to be by him paid or tendered to the defendant Scull under this agreement for sale, dated September 27th, 1895, as the residue of the purchase-money for the lot.

I will advise a decree against the defendants for the specific performance of the complainant's agreement upon the terms above stated.