On September 3d 1929, Francis X. Connors entered into a contract with the complainant to purchase lands and premises described in the bill. The purchase price was $2,400, payable as follows: $480 on the execution of the contract of purchase; the balance in monthly installments of $48 and interest on unpaid balances; the final installment to be made on or before February 1st, 1933. The premises in question were included in a blanket mortgage from which the complainant vendor covenanted to have the premises released. The deed of conveyance was to be a full covenant and warranty deed, free and clear of all encumbrances, excepting restrictions expressed in the contract. The contract further provided that Connors was to pay any and all taxes and assessments due against the premises after the date of the contract, within thirty days from the due date, and all assessments for public improvements, wholly or partly completed, at the date of the contract not then a lien upon the premises. The deed was to be delivered within thirty days after the receipt of the full purchase price.
Connors paid the monthly installments up to and including February 1st, 1933. The last payment prior to the date last mentioned was made January 10th, 1933. On January 18th, 1933, Emanuel Weitz, trustee in bankruptcy of Agnes K. Murphy Mulligan, initiated a suit in the United States district court for the district of New Jersey, against the complainant herein and others, through which he sought to obtain a decree which would vest the title in the premises in question, with other real estate, in him as trustee in bankruptcy of Mrs. Mulligan. A lispendens stating the object of the suit was filed January 18th, 1933, in the office of the clerk of the county of Bergen. Connors' attorneys received from the said Agnes K. Mulligan a letter dated October 21st, 1933, which reads as follows
"I will fix sixty days from the date, Saturday, October 21st, 1933, which will be December 20th, 1933, at 10 A.M. here, for closing; when it will be necessary for Francis X. Connors to be present to cancel both his contract and that of Palisade Gardens, Inc., on receipt of a Warrantee Deed which will be subject to all taxes and assessments since 1929." *Page 296 
In response to this letter Connors appeared at the complainant's office at ten A.M. on December 20th, 1933. At that time, the complainant's representative tendered to him a deed to said premises in which, among other things, there was a clause that the conveyance was made subject to all taxes and assessments since 1929. Because of the pendency of the suit in the United States district court, and the filing of the lis pendens, giving notice thereof, Connors refused to accept the deed. He contended that the title was not marketable. He then demanded a return of the moneys paid on account of the purchase price. The complainant refused to make any return.
Subsequently, on February 13th, 1934, Connors assigned his interest in the contract to the defendant herein, and she, as assignee, instituted suit in the New Jersey supreme court against the complainant to recover the moneys paid it by Connors. The action was tried in the Hudson circuit and, on May 6th, 1935, judgment was entered by the court's direction for $3,255.77 damages, and $73.31 costs, against the complainant herein (the defendant in the law action).
The complainant now seeks to restrain the enforcement of the judgment.
Prior to December 20th, 1933, the time finally fixed for the delivery of the deed, the complainant had procured, and recorded, a release of the premises from the lien of the mortgage.
During the course of the trial of the law action, this complainant endeavored to introduce testimony to show that Agnes K. Murphy Mulligan never at any time had any title or interest in, or to the premises. The court would not receive that evidence, declaring it was not a legal defense to the action. This complainant further endeavored to have the recovery of the plaintiff in that action limited to the sum of $48.77 being the amount paid by Connors after the filing of the lis pendens. The court, in denying that motion, stated that the limitation of the amount could be allowed only in the chancery court, saying:
"* * * this court is not a court of chancery. It is a court of law and I am not privileged to administer equity." *Page 297 
The contention of the complainant is that Connors was an innocent purchaser, in good faith, of the premises, and was without notice, knowledge or information of any alleged interest of the bankrupt Agnes K. Murphy Mulligan.
Payments on account of the purchase price of the premises, with the exception of the last payment of $48.77, were made by Connors before the lis pendens was filed in the Weitz suit in the United States district court.
On July 5th, 1935, an order was entered in the United States district court decreeing that Weitz had failed to establish any right, title or interest in or to the premises, and the lispendens was discharged of record.
Connors had not been made a party to the Weitz action in the United States district court.
The complainant, inter alia, contends:
"1. That by the contract of purchase, Connors acquired an equitable title in fee to the premises in question which antedated and, therefore, was superior to, any rights which Weitz, as trustee in bankruptcy of Mrs. Mulligan, would have acquired, had he prevailed in his suit in the United States district court.
"2. That Connors, having by valid contract purchased the premises in question more than three years prior to the bankruptcy of Mrs. Mulligan, and nearly three and a half years before Weitz, her trustee, brought his suit, he was not a purchaser pendente lite; and had Weitz been successful in his suit, the rights thus acquired by him would have been subject to the equitable estate vested in Connors by the contract of sale and by the payment of all but $48 of the principal of the contract.
"3. Connors was an innocent purchaser for full value without notice of any alleged outstanding interest of Mrs. Mulligan, and as such he had a good equitable title to said premises, which was superior, both in law and in equity, to any rights which Weitz, as trustee, would have acquired even if he had prevailed in his action in the United States district court.
"4. Had Weitz prevailed in his suit in the United States *Page 298 
district court, the decree in his favor would not have bound Connors, who was not a party to that suit.
"5. Had Connors accepted the deed tendered to him December 20th, 1933, any suit brought by Weitz, trustee, or anyone claiming under him, would necessarily have been brought in equity to set aside the deed to Connors. In any such suit Connors' equitable title would have been a complete defense.
"6. That defenses interposed by complainant in said action at law were overruled and held to be equitable in nature and not available in a court of law.
"7. That it is unjust, unconscionable, inequitable and oppressive that complainant should be compelled to repay to Connors, or his assignee, the amount of said judgment, when the deed tendered to Connors would have conveyed to him a perfect title in equity against Weitz, trustee, and anyone claiming under him, which title equity would always support and defend.
"8. That it is unjust, unconscionable, inequitable and oppressive to permit the enforcement of the judgment at law against it for the entire purchase price of the premises, when Connors, in violation of his contract, has defaulted in the payment of taxes and assessments amounting to substantially more than $4,000, and which are now a lien on said premises.
"9. Neither Connors, nor his assignee, has ever tendered a return of the contract, and neither in equity can justly be permitted to enforce said judgment."
Under the contract of purchase Connors unquestionably became an equitable owner of the fee, while the complainant vendor held the legal title as trustee for the benefit of the purchaser. Mr. Justice Depue, in Haughwout and Pomeroy v. Murphy, 22 N.J. Eq. 531
(at p. 546) said:
"In equity, upon an agreement for the sale of lands, the contract is regarded, for most purposes, as if specifically executed. The purchaser becomes the equitable owner of the lands, and the vendor of the purchase money. After the contract, the vendor is the trustee of the legal estate for the vendee.Crawford v. Bertholf, Sax. 460; Hoagland v. Latourette, 1Green Ch. 254; Huffman v. Hummer, 2 C.E. *Page 299 Green 264; King v. Ruckman, 6 C.E. Green 599. Before the contract is executed by conveyance, the lands are devisable by the vendee, and descendible to his heirs as real estate; and the personal representatives of the vendor are entitled to the purchase money. 1 Story Eq. § 789; 2 Ibid. § 1213. If the vendor should again sell the estate of which, by reason of the first contract, he is only seized in trust, he will be considered as selling it for the benefit of the person for whom, by the first contract, he became trustee, and therefore liable to account. 2 Spenc. Eq. Jur. 310. Or the second purchaser, if he have notice at the time of the purchase of the previous contract, will be compelled to convey the property to the first purchaser.Hoagland v. Latourette, 1 Green Ch. 254; Downing v. Risley,2 McCart. 94. A purchaser from a trustee, with notice of the trust, stands in the place of his vendor, and is as much a trustee as he was."
Martin v. State Insurance Co., 44 N.J. Law 485; Grunauer v.Westchester Fire Insurance Co., 72 N.J. Law 289. In the last cited case, the court of errors and appeals said (at p. 292):
"Undoubtedly such a contract creates the relation of trustee and cestui que trust between vendor and vendee. It produces in equity a complete transition of the vendor's holdings from real to personal, and gives the vendee the equitable ownership. After such contract the vendor's interest is no longer real estate,and the unpaid purchase money is personalty, and goes to the vendor's personal representative in case of his death."
Vice-Chancellor Grey in discussing the principle under consideration in Brinton v. Scull, 55 N.J. Eq. 747 (at p.756), said:
"The equitable effect of the agreement with the complainant was to make the complainant the equitable owner of the lands; Mr. Scull became the trustee holding the legal title for the complainant's benefit. Hoagland v. Latourette, 1 Green.Ch. 254; Haughwout v. Murphy, 7 C.E. Green. 546."
While Vice-Chancellor Grey's decision was reversed in 55 N.J. Eq. 489,
it was on a different point. *Page 300 
Assuming that Weitz prevailed in his suit in the United States district court, what effect would it have had upon Connors' equitable estate? Connors was not a party to the Weitz suit. His equitable title arose through the execution of the contract made on September 3d 1929, which was approximately three years before the institution of the suit in the United States district court; that suit began January 18th, 1933. Connors' title was not acquired pendente lite. Haughwout and Pomeroy v. Murphy,supra. Mr. Justice Depue in the last cited case (at pp. 544,545) observed:
"A suit in chancery, duly prosecuted in good faith, and followed by a decree, is constructive notice to every person who acquires from a defendant, pendente lite, an interest in the subject-matter of the litigation, of the legal and equitable rights of the complainant as charged in the bill and established by the decree. * * * But the defendant was not a purchaserpendente lite. He acquired title by a deed which bears date on the 7th day of August, 1865, and was acknowledged on the next day. The defendant testifies that it was delivered on the 7th of August. Boisaubin's testimony is that it was delivered on the 7th or 8th. From the date of the acknowledgment of the mortgage, it is probable that it was not finally delivered before the 19th. The proof, however, is full and clear that it was executed and delivered to Murphy before the bill was filed in the case ofHaughwout v. Boisaubin. The commencement of a suit in chancery is constructive notice of the pendency of such suit only as against persons who have acquired some title to or interest in the property involved in the litigation, under the defendant, after the suit is commenced. Stuyvesant v. Hall, 2 Barb.Ch. 151; Hopkins v. McLaren, 4 Cow. 667; Parks v. Jackson, 11Wend. 422. A person whose interest existed at the commencement of the suit is a necessary party, and will not be bound by the proceedings unless he be made a party to the suit. Ensworth v.Lambert, 4 Johns Ch. 605."
To the same effect is the principle expresed in 17 R.C.L. 1028§ 25:
"Until there be a suit pending there can be no such thing *Page 301 
as a purchaser pendente lite, and a person whose interests are acquired before the action is brought against his vendor will not be bound by its result. * * * Persons whose interests were acquired before the action was begun must be made parties to it, if they are to be affected by its result, and an interest acquired before the suit by a third person may be transferred after it has begun, free from the result of the litigation if the transferor is not a party thereto. And it is not always necessary to the operation of this rule that the interest existing at the commencement of the suit be clothed with the legal title, but it has been frequently held that the pendency of a suit involving the legal title to property will not affect the holder of an antecedently acquired equity so as to prevent his clothing himself with the legal title."
Parks v. Jackson, 11 Wend. 442. In Abington v. O'Dell,197 S.W. Rep. 339 (Missouri supreme court), the court said (atp. 340):
"This claim is not accompanied by any offer to adjust the equities between the parties on account of payments made by defendant while in possession under this contract of purchase for more than a year before that suit was brought.
"The defendant was not a party to that suit and could not be affected by it as such. The notice of suit, which was filed under the statute * * * is constructive notice to purchasers only from the time of filing the notice. It would not be constructive notice to a purchaser, who acquired his right before the notice was filed.
21 Am. Eng. Encyc. L. (2d ed.) 648. In Lee v. Silva,197 Cal. 364; 240 Pac. Rep. 1015 (California supreme court), the court said (at p. 1018):
"It is the rule, generally, that a person having acquired a contractual interest in land, even though the contract be executory in its nature, prior to the institution of an action affecting the land, must be made a party to the action, and, if not so made a party will retain the right to clothe his equity with the legal title as if no such action had been instituted, and this is so even though such person does not complete the payment of the purchase price of the land, nor *Page 302 
receive a conveyance of the legal title thereto until after the institution and during the pendency of the action."
Weitz, in his suit, was proceeding under the principles expressed in our statute governing fraudulent conveyances. That statute has for its purpose the protection of the interest of those who purchase a title in good faith and for a valuable consideration, without which the purchase would be void against creditors. Statute of Frauds and Perjuries, 2 Comp. Stat.p. 2621 § 15; 1 Cum. Supp. Comp. Stat. 1911-1924 p. 648 § 44-150.
Chief-Justice Beasley, speaking for the court of errors and appeals, in Phelps v. Morrison, 25 N.J. Eq. 538 (at p. 540) said:
"Upon the usual principles of equity, as administered in England and in this country, no one can doubt that the lien of a judgment at law upon lands, will not prevail against the equity of a purchaser, who, before rendition of such judgment, has, in good faith and without notice of anything wrong in the affair, paid his money. Under such circumstances, it has often been declared that the equitable will overcome the legal right."
And at page 544, the Chief-Justice said: "I think, as between the complainant, the judgment creditor, and Allendorph, the equitable purchaser from the fraudulent grantee, the section of the statute just referred to is wholly inoperative. By the sixth (now fifteenth) section of the act, the rights of the bona fide
purchaser are protected and preserved by being withdrawn wholly from the statutory operation. This clause, in substance, declares that the act shall not extend to, or be construed so as to impeach or make void, any conveyance made upon good consideration, and bona fide, to any person without notice or knowledge of the fraud tainting the transaction. This language is very comprehensive, and appears to embrace the equitable transfer to the defendant, Allendorph, from the wife of the judgment debtor."
In Miller v. Headley, 109 N.J. Eq. 436, Vice-Chancellor Fielder said (at p. 443):
"I am satisfied that Miller had a contract with Headley *Page 303 
which he was entitled to have Headley perform on May 15th and the question now is as to the effect on Miller's right, of Headley's conveyance of tract A to Hockenjos May 20th. Hockenjos is not a party to the Miller suit although he should have been made a defendant because of his record interest in tract A under his contract recorded before the Miller bill was filed, but as to the further interest which Hockenjos subsequently acquired by Headley's deed, he will be bound by a decree against Headley at Miller's suit because he (Hockenjos) acquired such further interest after the Miller bill was filed and subpoena issued and after the filing of notice of pendency of that suit." (Citing authorities.)
At page 444, the vice-chancellor continued: "Upon the delivery of Headley's contract with Miller, the latter became the equitable owner of tracts A and B and Headley held the legal title as trustee for Miller. Haughwout v. Pomeroy, supra;Dean v. Anderson, 34 N.J. Eq. 496; Flatteau v. Logan, 72 N.J. Eq. 338; McVoy v. Baumann, 93 N.J. Eq. 360, 638; Kotok v.Rossi, 94 N.J. Eq. 327. When Hockenjos contracted with Headley to purchase tract A and paid $1,000 on account of the purchase price, he did not know of Headley's prior contract with Miller, and as a bona fide purchaser without notice he is entitled to be protected for such payment, but when he accepted Headley's deed for tract A and paid the balance of his purchase price, he was not a purchaser without notice, because a lis pendens in the suit of Miller against Headley was then on record and under the Lis Pendens act (Pamph. L. 1930 ch. 119) he is deemed to have acquired his further interest with knowledge of the Miller contract. To the extent of the $2,000 balance of the purchase price Hockenjos paid for his deed, he was not a bona fide
purchaser without notice and he is not entitled to hold title to tract A as against Miller, the equitable owner thereof." (Citing authorities.) Affirmed, 112 N.J. Eq. 89, on the opinion below.
Regardless of the fact that Connors was not a purchaserpendente lite, it conclusively appears he was an innocent purchaser for value without notice of any claim or interest which *Page 304 
Agnes K. Murphy Mulligan may have had in the premises. Under those circumstances, equity guards, protects and sustains his equitable interest in the premises. Assuming Connors' equitable title was acquired after the pretended, or alleged, rights of Weitz, trustee, but before the filing of the lis pendens, the extent of his liability to the trustee would have been $48.77 with interest — that being the amount paid by him after the filing of the lis pendens. Under the provisions of the statute of frauds and perjuries, herein cited, and under the ruling declared in Phelps v. Morrison, supra, a bona fide
purchaser acquiring a legal or equitable title to lands from one to whom the title had been fraudulently conveyed, will be protected against a judgment subsequently recovered against the fraudulent grantor.
In the law action, the complainant herein offered these defenses, which were rejected and overruled by the presiding judge:
"1. That Weitz, trustee, had no right or interest in the premises (now adjudged by the United States district court).
"2. That the rights of Weitz, trustee, if any, were subject and subordinate to Connors' equitable title.
"3. That Connors' assignee, if entitled to recover anything, should be limited to $48.77, the amount paid after the filing of the lis pendens.
"4. That the lien of taxes and assessments on the premises amounting to over $4,000 which Connors was obligated to pay, should bar recovery."
Without going into a discussion of the legal effect of the defenses offered, and questioning the ruling of the court in the law action, it suffices to say that such defenses would be permitted in an equitable suit. The court of appeals, in the case of Headley v. Leavitt, 65 N.J. Eq. 748 (at p. 751), said:
"The complainant appeared and put in the defense of accord and satisfaction founded upon the contract and the acts of the parties thereunder; but because the defendant had not, in fact, taken up the notes in group B and therefore could not show satisfaction the defense was overruled by the *Page 305 
learned trial judge and verdict was directed for the plaintiff."
At page 755, the court continued: "Under the circumstances, we think the contract was an existing one at the time of the trial, and that the complainant had an equitable defense to the action, which was not within the jurisdiction of the common law court to consider.
"This being so, the complainant is not barred in equity from seeking the remedy that was determined adversely to him in the law court. The rule is that where the party has equitable rights not cognizable in a court of law, which would in a court of equity have prevented such an adjudication as was made in the court of law, the judgment will interpose no obstacle to redress in equity, since the court of law had no proper jurisdiction of the subject-matter forming the basis of redress in equity. 2Story Eq. Jur. 1573. In Smalley v. Line et al., 1 Stew. Eq.348, it was held that the fact that complainant attempted to set up a merely equitable defense in a suit at law will not debar him for subsequently setting it up in a court of equity against the judgment. This doctrine is sustained, also, in Hughes v.Nelson, 2 Stew. Eq. 547. Nor is a party denied such remedy because he did not test the accuracy of the action of the law court in overuling his defense by a review on error. He may accept the ruling of the law court and pursue his remedy in equity. Borcherling v. Ruckelshaus, 4 Dick. Ch. Rep. 340."
In Gallagher v. Lembeck Betz Eagle Brewing Co., 86 N.J. Eq. 188,
the court of errors and appeals said (at p. 190):
"We are of opinion that this bill, the statements of which for present purposes must be taken as true, makes out a complete case for equitable relief. It is very similar to the case of O'Brien
v. Paterson Brewing and Malting Co., 69 N.J. Eq. 117, in which Vice-Chancellor Pitney awarded an injunction and decreed the delivery of the note for cancellation. Whether the complainant may maintain a defense at law on these facts seems immaterial in view of the decisions. In Metler v. Metler's Administrators,19 N.J. Eq. 457, a similar case, it was held that even though the defense was good at law, the complainants were entitled as against the *Page 306 
payee to an injunction against enforcement of the note at law, and to a decree that it be delivered up. In Headley v.Leavitt, 65 N.J. Eq. 748, it was held that if the defense to the note be not good at law, the defendant at law may after judgment and without appeal of the judgment at law invoke the aid of a court of equity."
In Smalley v. Line and Nelson, 28 N.J. Eq. 348, the court said (at p. 352):
"The fact that the complainant set up as a defense in the suit at law, the same matters which he relies upon as the ground of relief here, is no bar to his claim for relief, for those matters were ground for equitable relief only, and were not ground of legal defense."
Hughes v. Nelson, 29 N.J. Eq. 547. In this last cited case the court said (at p. 550):
"Is he barred by the judgment at law? His right to the note was purely equitable; a legal title could not be acquired without writing. Having simply an equitable right, he was without remedy in a common law tribunal, but he attempted to avail himself of his right there, and failed. Does that adjudication bar his remedy here? I think it is very clear it does not. He failed there because that tribunal could neither enforce nor recognize his title. It was only authorized to enforce his legal rights; it was not competent to enter upon an inquiry whether or not he was the equitable owner of the note. It is obvious, its adjudication does not conclude an inquiry it could not make, nor cut off a remedy it was incompetent to administer."
Borcherling v. Ruckelshaus, 49 N.J. Eq. 340;24 Atl. Rep. 547. These authorities make clear the right of the complainant to come into equity and set up in vindication of his rights those defenses which were rejected at law.
I am satisfied (1) that the title tendered to Connors was good and superior to the rights which Weitz could, or might, have obtained; (2) the disposition of Weitz' suit determines that the title tendered by the complainant was and is good at law; (3) even if Weitz prevailed in his suit, he unquestionably would have been forced to seek a remedy in equity where *Page 307 
the Connors' equitable title is valid; (4) under the authorities cited, Weitz, had he prevailed in his suit, could have recovered at the utmost, the final payment of $48.77, which was made after the lis pendens was filed in the Weitz suit.
The prayer of the bill is granted.