## PIERCE *v.* UNITED STATES.

No. 36. Argued November 14, 17, 1941.—Decided December 8, 1941.

*Mr. L. E. Gwinn* for petitioner.

*Assistant Attorney General Berge,* with whom *Assistant Solicitor General Fahy* and *Mr. Oscar Provost* were on the brief, for the United States.

MR. JUSTICE REED delivered the opinion of the Court.

Petitioner was convicted under an indictment charging violation of § 32 of the Criminal Code. At the time of the alleged offense it read as follows:

"Whoever, with intent to defraud either the United States or any person, shall falsely assume or pretend to be an officer or employee acting under the authority of the United States, or any Department, or any officer of the Government thereof, and shall take upon himself to act as such, or shall in such pretended character demand or obtain from any person or from the United States, or any Department, or any officer of the Government thereof, any money, paper, document, or other valuable thing, shall be fined not more than one thousand dollars, or imprisoned not more than three years, or both." 35 Stat. 1095; 18 U. S. C. § 76.

The conviction was affirmed, 115 F. 2d 399, and certiorari granted, 313 U. S. 552, on account of petitioner's heretofore undecided contention of manifest error in the trial court's refusal of an instruction that the statute did not include within its scope false personation of officers or employees of a government corporation, i. e., the Tennessee Valley Authority (TVA).

The section has been upon the statute books since April 18, 1884. 23 Stat. 11. It was passed because of reports to Congress, by the Pension Office, of fraudulent practices affecting pension claimants. There is nothing in the legislative history which throws any light on the problem posed.[1] Nor do we find any fruitful comments in the various reports preliminary to the enactment of the Criminal Code, which adopted the original language without significant change.[2] Subsequently to the acts forming the basis of the respective counts of the indictment, the section was amended to include pretending to be an officer or employee "of any corporation owned or controlled by the United States." Act of Feb. 28, 1938, c. 37, 52 Stat. 82.

The counts of the indictment which were submitted to the jury charged the defendant with falsely pretending to be an officer "of the United States, to wit, [a representative] of the Government selling T.V.A Units" then and there taking upon himself to act as such officer with intent to defraud separate individuals named in the counts or with obtaining from the named individuals stated sums of money with intent to defraud. The indictment states crimes under the statute.

---

[1] 15 Cong. Rec. 1285, 2256, 2627, 2676, 48th Cong., 1st Sess.

[2] Report of the Special Joint Committee on Revision of the Laws, Sen. Rep. No. 10, 60th Cong., 1st Sess., Part 1, p. 40; Final Report of the Commission to Revise and Codify the Laws of the United States, Vol. 1, p. 101, Vol. 2, p. 1776 (1906); Report of the Commission to Revise and Codify the Criminal Laws of the United States, Sen. Doc. No. 68, 57th Cong., 1st Sess., Part 2, pp. ix and 12, § 37.

On the trial it was stipulated that petitioner was not at any time an agent, employee or representative of the Government, or any department thereof, or of the TVA. It was shown that TVA was a government corporation and that it issued no stock or units for sale. The evidence further showed petitioner was editor and vice president of a newspaper, the Huntsville (Alabama) Daily Register, and that the representations occurred during "a community publicity advertising" campaign. He carried a letter from his paper introducing and identifying him as engaged in getting out "the Muscle Shoals series of page newspaper advertisements," and carried a bundle of the old issues of the paper as demonstrations of the publicity assistance to be given the TVA. The TVA units were participations in the cost of the page advertisements in the Daily Register, telling of the TVA benefits to the community, which cost the victims of the alleged swindle $10 each. Those who purchased by cash or check received on the spot receipts of the Daily Register, signed by petitioner, for the advertising cost paid. The wide publicity obtained from the construction of the TVA flood and power project had prepared the way for easy acceptance of the scheme by the credulous. Some subscribers to the units, who felt they had been duped by the salesman, testified to the circumstances of their fleecing on the occasions specified in the indictment. Their evidence showed to the satisfaction of the jury that Pierce, taking upon himself to act as a government employee, said or gave them the impression that he represented the Government, that the Government was contributing to the cost of the advertising for the development of TVA, and that, as one witness phrased it, the purpose was "Just the advancement of TVA in our country." Another witness testified "It never dawned on me that it was a personally owned newspaper."

All the counts included a charge of impersonation of a representative of the United States "selling TVA units." The evidence, as to some, was that Pierce said he represented TVA; as to others, it was that he represented the Government selling TVA or TVA units. In no instance is there testimony that Pierce represented himself as an employee or officer of the United States unconnected with the public enterprise of the TVA at Muscle Shoals. The instructions followed the charges and evidence. They made clear that the charges against Pierce were for false impersonation by assuming to act as an officer or employee of the United States with fraudulent intent, and not simply for obtaining money by false pretenses or false claim of stimulating the Tennessee Valley development. The instructions repeated, with many variations, the thought that Pierce must have actually and intentionally represented himself or assumed to be an officer of the United States, acting under its authority. References were made to TVA. It was said defendant was selling or attempting to sell TVA units. It was further pointed out that the mention of TVA in the copies of the Daily Register which were exhibited "by the defendant to any person, from whom funds were solicited, and in the sales talks made by him to such person should not be considered by you as evidence of a false claim or pretense of Federal Authority on the part of the defendant, Pierce, unless you further find and are satisfied from the proof, beyond a reasonable doubt, that such reference to TVA, in either the newspapers or sales talks, were made by the defendant with the intent of producing a belief on the part of the person from whom funds were solicited that he, the defendant Pierce, was acting as an officer or employee of the Federal Government."

There was a refusal by the trial court, however, to give the following instruction:

"At the request of the defendant, the Court further instructs the jury that the Tennessee Valley Authority, commonly designated as TVA, although an instrumentality of the Federal Government, is a corporate entity, separate and distinct from the Federal Government itself, and the officers and employees of that corporation are not within the scope of the statute on which the indictment in this case is based. Consequently, any claim or representation by the defendant, if you find that such claim or representation was made, that he was representing the TVA, or was connected with the TVA as an officer or employee, would not constitute the false impersonation of an officer or employee of the United States Government or any department thereof, TVA officers and employees not being officers and employees of the Federal Government or some department thereof, within the meaning of the statute which the defendant is alleged to have violated, in the several counts of the indictment."

Nor do we find any comparable statement which was given. In this refusal, we find material error.

So closely entwined were the TVA and the Government (the United States) in the instructions and the evidence on the various counts that any jury might well have thought a pretense that Pierce was an employee or officer of the TVA violated the statute, and have voted for conviction for that reason. This, however, in our view, is incorrect, and constitutes prejudicial error. Cf. *Warszower* v. *United States,* 312 U. S. 342; *Stromberg* v. *California,* 283 U. S. 359; *Nash* v. *United States,* 229 U. S. 373. The statute in effect at the time of the commission of the alleged offenses did not speak of pretenses of acting under authority of corporations owned or controlled by the United States. It was passed in 1884 before the United States owned or controlled corporations operating hotels, boat lines, or generating plants. The amendments, subsequent to the occasions fixed by the indictment, extended

its scope first to the Home Owners' Loan Corporation, 49 Stat. 298, and later to all corporations owned or controlled by the United States, 52 Stat. 82.[3] These legislative extensions of the scope of the Act were in accord with the growing importance of the administrative corporation, but a comparable judicial enlargement of a criminal Act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness. Cf. *Lanzetta* v. *New Jersey*, 306 U. S. 451, and cases cited. While the act should be interpreted "so as . . . to give full effect to its plain terms," *Lamar* v. *United States*, 241 U. S. 103, 112; *United States* v. *Barnow*, 239 U. S. 74, we should not depart from its

---

[3] The reports of the Judiciary Committee of the Senate and of the House of Representatives bear upon their view of the proper interpretation of the act in its original form. The reports incorporated the following letter:

"OFFICE OF THE ATTORNEY GENERAL,
*Washington, D. C., May 7, 1937.*

Hon. WILLIAM B. BANKHEAD,
*The Speaker, House of Representatives,*
*Washington, D. C.*

MY DEAR MR. SPEAKER: The existing law makes it a crime to impersonate any officer or employee of the United States with intent to defraud (Criminal Code, sec. 32; U. S. Code, title 18, sec. 76). It seems desirable to extend the scope of the act so as to penalize impersonation of officers and employees of Government-owned and Government-controlled corporations.

The maximum penalty that may now be imposed for the offense of impersonation is imprisonment for a term of 3 years and a fine of $1,000. In aggravated cases a greater punishment may prove suitable, and I suggest increasing the maximum penalty to imprisonment for 5 years and a fine of $5,000.

A bill to effectuate this purpose is submitted herewith.

Sincerely yours,

JOSEPH B. KEENAN,
*Acting Attorney General."*

H. Rep. No. 1763, 75th Cong., 3d Sess.; S. Rep. No. 823, 75th Cong., 1st Sess.

words and context. Another section of the Criminal Code (§ 35) was amended to meet the new development, by the Act of October 23, 1918, 40 Stat. 1015. Cf. *United States* v. *Strang,* 254 U. S. 491. The TVA Act made certain federal penal statutes applicable to the Authority but pointedly omitted § 32.[4] This pointed omission is indicative of intention.

Previous cases as to identity between the Government and its corporations turned on considerations not here applicable. In *Emergency Fleet Corp.* v. *Western Union,* 275 U. S. 415, 426, the Corporation was held a department of the Government within the meaning of the Post Roads Act and so entitled to lower telegraph rates than private corporations. An indictment under Criminal Code § 37 for a conspiracy to defraud the United States "in any manner" was held to state a crime when the contemplated fraud was upon the United States Emergency Fleet Corporation. *United States* v. *Walter,* 263 U. S. 15, 17. But this decision is bottomed on the broad ground that fraud which interferes with the successful operation of the

---

[4] May 18, 1933, c. 32, § 21, 48 Stat. 68:

"(a) All general penal statutes relating to the larceny, embezzlement, conversion, or to the improper handling, retention, use, or disposal of public moneys or property of the United States, shall apply to the moneys and property of the Corporation and to moneys and properties of the United States intrusted to the Corporation.

"(b) Any person who, with intent to defraud the Corporation, or to deceive any director, officer, or employee of the Corporation or any officer or employee of the United States (1) makes any false entry in any book of the Corporation, or (2) makes any false report or statement for the Corporation, shall, upon conviction thereof, be fined not more than $10,000 or imprisoned not more than five years, or both.

"(c) Any person who shall receive any compensation, rebate, or reward, or shall enter into any conspiracy, collusion, or agreement, express or implied, with intent to defraud the Corporation or wrongfully and unlawfully to defeat its purposes, shall, on conviction thereof, be fined not more than $5,000 or imprisoned not more than five years, or both."

Government is within the statute. *Haas* v. *Henkel*, 216 U. S. 462, 479, 480. On the other hand, in *United States* v. *Strang, supra,* in construing Criminal Code § 41 [5] this Court held an employee of the Fleet Corporation was not an agent of the United States within the true intendment of the section. The *Strang* case had the approval of the Court in the opinion deciding the *Walter* case. The statute in the *Strang* case points directly at a particular class of persons as the object of the sanction. It leaves, as does the statute here, no room for enlargement of its meaning.

*Reversed.*

MR. JUSTICE DOUGLAS dissents on the ground that a false representation by the defendant that he was acting for the Tennessee Valley Authority constituted a false pretense that he was an officer or employee acting under the authority of the United States or a department thereof, within the meaning of § 32 of the Criminal Code.

MR. JUSTICE BLACK and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

---

[5] "Sec. 41. No officer or agent of any corporation, joint stock company, or association, and no member or agent of any firm, or person directly or indirectly interested in the pecuniary profits or contracts of such corporation, joint stock company, association, or firm, shall be employed or shall act as an officer or agent of the United States for the transaction of business with such corporation, joint stock company, association, or firm. Whoever shall violate the provision of this section shall be fined not more than two thousand dollars and imprisoned not more than two years." 35 Stat. 1097; 18 U. S. C. § 93.