Amos S. Basel, J.
(dissenting). Defendant Badicli is charged with a misdemeanor by reason of exhibiting and offering for sale in his art gallery a form of sculpture called! ‘ constructions ” designed of American flags in forms described in the majority opinion. Defendant’s gallery is Avell established in the Nbav York art Avorld. The exhibition was reviewed by art critics *722 including the critic for The New York Times and was treated as a serious artistic offering. The works complained of, when displayed, were accompanied by a musical background of taped anti-war songs. The sound must be considered part of the exhibit. Modern artists often use additional media to accompany their visual creations to express their ideas more completely and to create a total effect. It is in the context of the anti-war theme, the statement the artist attempts to make must be judged. Defendant describes his efforts as “ protest art.” The creator of this' work specifically protests America’s participation and leadership in the Vietnam war.
There are many Americans in opposition to the war, who reverence the flag and to whom, ‘1 it signifies government resting on the consent of the governed, liberty regulated by law, the protection of the weak against the strong; security against the exercise of arbitrary power; and absolute safety for free institutions against foreign aggression.” (Halter v. Nebraska, 205 U. S. 34, 43.) These loyal dissenters vehemently, honestly and passionately oppose United States intervention in Vietnam. They have devised varied means to express their opposition. This group argues, and many are veterans who fought to protect the flag, that the flag is being placed in contempt by our “ aggression ” and persistence in this war. They protest that the image of the American flag as a symbol of freedom to lovers of liberty and a shining object to the oppressed is cast in contempt.
This is the message the artist seeks to convey, in the work defendant exhibited. We may quarrel with his theme, disagree with his method, condemn his goal. We cannot dispute his right to express dissent even though the means be loathsome to us. ‘ Laws must, to be consistent with the First Amendment, permit the widest toleration of conflicting viewpoints consistent with a society of free men,” (Board of Educ. v. Barnette, 319 U. S. 624, 644.) We can also nót ignore the fact that large groups of Americans agree with his dissent, as witness the recent march of 100,000 upon the U. N. “ Freedom to differ is not limited to the things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order.” (Board of Educ. v. Barnette, supra, p. 642.)
It is not the dissent for which defendant is prosecuted, we are told, it is the method that is condemned. It is the fact that the artist whose work defendant exhibits has chosen as his means of expression, to define the flag by hanging it in effigy, draping it in chains, shaping it as a phallus on a cross, this *723 opposition may no longer be characterized as free expression, it is contemptuous conduct. The sculptor cannot declare his dissent in this form, it is argued, because it violates and shames the symbol of our land and is thus a crime as defined in section 1425 of the Penal Law (subd. 16, pars, d and f).
Defendant contends artist is not showing contempt for the flag. He supports what it symbolizes, liberty, equality, freedom, but he protests by means of these £t constructions ” that those virtues have been abandoned by United States conduct in Vietnam. The ideals the flag represents, he argues, are enchained, its inspiration publicly hangs in shame before the world, and the church and State are jointly to be charged as violators of the innocent. He makes that protest visible, it takes sculptural form.
It is essential that legislation which is criminal in character be clearly drawn and precise so that those enforcing it will know its meaning and those subject to it can clearly regulate their conduct. If such legislation has a tendency to impair or impede free speech it must be judged ultra carefully. (Winters v. New York, 333 U. S. 507, 509; Stromberg v. California, 283 U. S. 359; Herndon v. Lowry, 301 U. S. 242.) As Judge Learned Hand said in Masses Pub. Co. v. Patten (244 F. 535, 540): “Assuming that the power to repress such opinion [hostile criticism] may rest in Congress in the throes of a struggle for the very existence of the state, its exercise is so contrary to the use and wont of our people that only the clearest expression of such a power justifies the conclusion it was intended.” Section 1425 (subd. 16, par. d) reads in full: “ Shall publicly mutilate, deface, defile, or defy, trample upon, or cast contempt upon either by words or act ”. It does not describe the object of this condemnation. Although a reading of the full statute (all of subdivision 16 of section 1425 might suggest it was a flag that was the Legislature’s concern, paragraph d of subdivision 16 does not say so and it is the only paragraph in subdivision 16 of section 1425 which omits the word ‘£ flag. ’ ’ It would be novel criminal law to convict anyone under such a statute, to read the word flag into it in order to obtain a conviction is in my view clearly unconstitutional.
The prosecution and the question is thus narrowed and confined to the validity of paragraph f of subdivision 16 “shall publicly carry or display any emblem, placard or flag which casts contempt, either by word or act, upon the flag of the United States of America ’
Who shall be the judge of what word or act is contemptuous? Which act, what words constitute contempt?
*724 ‘1 The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement. The crime ‘ must be defined with appropriate definiteness.’ Cantwell v. Connecticut, 310 U. S. 296; Pierce v. United States, 314 U. S. 306, 311. There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of an enactment ’’.
(Winters v. New York, 333 U. S. 507, 515. United States v. Cohen Grocery Co., 255 U. S. 81.)
In Herndon v. Lowry (supra, pp. 263-264) the Supreme Court said: “ The statute, as construed and applied, amounts merely; to a dragnet which may enmesh anyone who agitates for a change of government if a jury can be persuaded that he ought to have foreseen his words would have some effect in the future conduct of others. No reasonably ascertainable standard of guilt is prescribed. So vague and indeterminate are the boundaries thus set to the freedom of speech and assembly that the law necessarily violates the guarantees of liberty embodied in the Fourteenth Amendment. ’’ (See, also, People v. Bookcase, Inc., 14 N Y 2d 409; People v. Kahan, 15 N Y 2d 311.)
The statute in the instant case is drawn so broadly and is so vague that any words or any acts to which someone in authority takes offense, can' be deemed criminal. “The constitutionality of a statute governing publications is to be tested by what can be done under it and not by the particular violation which is charged with having occurred.” (People v. Bookcase, Inc., supra, p. 418; italics added.) The 100,000 who marched upon the U.N. are critical of the uses to which the flag is being put in Vietnam, as are Senator Fulbright, Senator Hatfield and thousands of others. Are they guilty of a crime if they say the flag has been placed in chains by United States conduct? No one would seriously argue they be jailed for expressing verbally or in writing what the artist here makes visual. I agree with defendant’s art expert that the artist’s talent is limited, his symbolism obvious, cliche and lacking in imagination. I acknowledge he has chosen a means of expression in extreme poor taste and shabby in form. But is he to be punished for his lack of maimers and his vulgarity when his intention is a serious condemnation of our present foreign policy? Who is to judge under this statute if what he did is unlawful? If those who marched in opposition are his judges, it is doubtful they will find his conduct contemptuous. If those who hurled insults at the parade were on his jury, they would almost certainly find him guilty. “A person gets from a symbol the meaning he puts into it ”. (Board of Educ. v. Barnette, 319 U. S. 624, 632-633, *725 supra.) “It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against.” (United States v. Cohen Grocery Co., 255 U. S. 81, 89, supra.) The Legislature has established standards so vague, indefinite, imprecise and subjective, the statute under discussion should be held unconstitutional. As Chief Justice Hughes said in Stromberg v. California (283 U. S. 359, 369, supra): “The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means * * * is a fundamental principle of our constitutional system. A statute which upon its face * * # is so vague and indefinite as to permit the punishment of the fair use of this opportunity is repugnant to the guaranty of liberty contained in the Fourteenth Amendment.”
Halter v. Nebraska (205 U. S. 34, supra) relied upon by the People and the majority opinion and followed in People v. Picking (288 N. Y. 644) is distinguishable. In a recent case involving disrespect for the flag, in Federal District Court, although the court did not take jurisdiction for procedural reasons, it said: “ The substantive constitutional issues are not insubstantial. This view can scarcely bo altered by Halter which was decided several years before the protections of the First Amendment were held firmly applicable to the states through the Fourteenth Amendment. However, the argument that the statute is unconstitutional for vagueness was notably absent in the Halter case.” (Dunncombe v. State of New York, U. S. Dist. Ct., S. D., N. Y., Civ. 1085, April 11, 1967, Bryan, J.) Halter also passed only on the advertising provisions of section 1425. These are more carefully drawn than section 1425 (subd. 16, pars, d, f) and are more detailed and not vague. Halter is further distinguished by the fact that advertising is not yet protected by the First Amendment.
The other argument advanced by defendant, that the statute intends to exempt all forms of expression as protected by the First Amendment and that all sculpture as well as all painting is included in the descriptive term in the statute, “ ornamental painting,” does not require discussion in view of the opinion here expressed as to the unconstitutionality of the statute.
The motion to dismiss should have been granted and the defendant found not guilty. I dissent from the majority view.
Comerford, J., concurs with Strong, J.; Basel, J., dissents in opinion.