Amos S. Basel, J.
These 41 defendants are charged with loitering in violation of subdivision 6 of section 240.35 of the Penal Law. This section reads:
‘1 A person is guilty of loitering when he * * * Loiters, remains or wanders in or about a place without apparent reason and under circumstances which justify suspicion that he may be engaged or about to engage in crime, and upon inquiry by a peace officer, refuses to identify himself or fails to give a reasonably credible account of his conduct and purposes ”.
It appears in each case that the defendant is alleged to be engaged or about to engage in prostitution. In some cases it is additionally alleged that defendant upon inquiry by a police officer failed ‘ ‘ to give a reasonably credible account of her conduct and purposes ”.
The informations are based upon observations of police officers in which they say they saw defendants, known or suspected prostitutes speak to two or three men while walking *775 or standing on a public street. The officers did not overhear the conversations, did not know who the men were, they thereupon arrested defendants pursuant to the statute upon the grounds that they were engaged or about to engage in prostitution. In some few cases police officers in addition to the observations referred to, spoke to defendants and requested an explanation of their conduct. The accounts were not deemed ‘ ‘ reasonably credible” and defendants were then arrested. Some of these defendants have no prior records for prostitution or otherwise. Each defendant moves to dismiss the information on the grounds (1) the statute does not cover loitering by one alleged to be engaged in prostitution, and (2) the statute is unconstitutional.
The eases are submitted together, on consent, with separate verdicts to be entered in each case.
Loitering as defined in subdivision 6 of section 240.35 became an offense in New York on September 1,1967.
This court takes judicial notice that these defendants are 41 of a group of alleged prostitutes who have been arrested and detained 2,500 times for disorderly conduct and loitering in New York City since August 18th. (New York Times, Sept. 26, 1967, p. 1; New York Times, Sept. 27, 1967, p. 48; Oct. 1, 1967, [News of Week, p. 7].) This court of its own knowledge is aware that except for a few isolated instances where defendants pleaded guilty, the disorderly conduct cases were dismissed. In many instances “ the girls ” were arrested after 11:30 p.m., too late to be arraigned, night court had been adjourned, then kept overnight in a cell. In the morning they were brought to court and released because the offenses for which they had been arrested could not be proven to have been committed by them.
In recent months, this city has been overrun by street walkers attracted to the sidewalks of New York by the largesse of the new Penal Law (eff. Sept. 1, 1967) which reduced the maximum penalty for prostitution from six months’ incarceration, or a possible three-year reformatory term, to a maximum .sentence of 15 days.
The appearance of this problem is not a happy event. These street girls are a health hazard and constitute an offense against public order and decency. ‘£ The right of the normal, decent citizen to go about the streets without affront to his or her sense of decency should be the prime consideration and should take precedence over the interests of the prostitute and her customers.” (Wolfenden Report, Report Of The Committee On *776 Homosexual Offenses and Prostitution. Lancer Books ed., p. 165.) The constant public parading of the prostitutes’ wares constitutes a nuisance with which the law must cope.
The pressure upon public officials by owners of restaurants, theatres, hotels and other business people in the areas frequented by these prostitutes has been tremendous. In response, the police, beset by many other problems which require all of their manpower to be committed at all times, to stem the rise of violent crime, resorted to mass arrests. In an effort to remedy the street walker situation with a minimum of police effort, the painstaking method of arresting prostitutes by plainclothesmen posing as customers, for soliciting them to engage in sexual relations was curtailed. The uniformed force was employed to make roundup arrests for disorderly conduct (congregating, refusing to move when requested by an officer). When the courts opposed this activity (New York Times, Sept. 26, 1967, p. 1; Sept. 27, 1967, p. 48) the arrests continued undiminished but the legal theory was varied to loitering.
Law enforcement officials these days must bear heavy, difficult burdens under trying circumstances. But as long as we desire our constitutional system to survive, the rights of all individuals when confronted by the power of the State must be paramount even though this makes police work more difficult. If we are to preserve our form of democracy, the guarantee of the constitutional rights of even common street walkers must be the serious and careful concern of all of us. The right to the protection of the bill of rights cannot be limited to those whom society pronounces to be respectible. The policeman’s lot may not be an easy one, but he must discharge it within constitutional limits. “ It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest.” (Henry v. United States, 361 U. S. 98, 104.) Once we decree that the end justifies the means as is here attempted, we have irreparably breached the constitutional dike.
In this connection, one of our country’s distinguished jurists has pointed out: 1 The quality of a nation’s civilization can be largely measured by the methods it uses in the enforcement of its criminal law.’” (Miranda v. Arizona, 384 U. S. 436, 480.)
As Mr. Justice Brandéis said in Olmstead v. United States (277 U. S. 438, 485 [dissenting opn.]):
“In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good *777 or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means * * * would bring terrible retribution. Against that pernicious doctrine this Court.should resolutely set its face.”
In the instant case, have we created a crime, loitering, to be “used as a cloak or cover for arresting and convicting people for some other crime that cannot be proved or for conduct that is not a crime? ” (Justice Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L. J. 1, 8-10.) If we have, we are faced with a clearly unconstitutional statute.
In Shuttlesworth v. City of Birmingham (382 U. S. 87, 90), the court was passing on a statute which made it unlawful ‘ ‘ for any person to stand or loiter upon any street or sidewalk * * * after having been requested by any police officer to move on.” The court held the statute void and said, “ a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration.” (See, also, Cox v. Louisiana, 379 U. S. 536, 579.)
The instant statute is suspect also on the grounds that it violates one of the basic concepts of our constitutional system — that a penal statute be ‘ ‘ sufficiently explicit to inform these who are subject to it what conduct on their part will render them liable to its penalties ”. (Connally v. General Constr. Co. 269 U. S. 385, 391; Cantwell v. Connecticut, 310 U. S. 296; Pierce v. United States 314 U. S. 306, 311.) Here it is the judgment of the officer and not the activity of the defendant which constitutes the crime. “It takes little imagination to perceive that the ‘ reasonable account * * * requirement of the ordinary vagrancy law operates simply as a charter of dictatorial power to the policeman. ’ ” (Amsterdam, Federal Constitutional Restrictors, 3 CR Law Bulletin 205, 223.)
Additionally, as Mr. Justice Douglas has noted, when the law operates on the theory that loitering might lead to the commission of a crime and is therefore in itself criminal, ‘ ‘ suspicion is the foundation of the conviction, the presumption of innocence is thrown out the window ”. (Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L. J. 1, 11) and, as the Bible tells us “ Trust not in oppression ”. (Psalm 62.)
A statute under which arrests are made of “ suspected criminals, with respect to whom the authorities do not have enough *778 evidence to make a proper arrest or secure a conviction on the crime suspected ” (Fenster v. Leary, 20 N Y 2d 309, 316) cannot be a constitutional device or our system no longer has meaning. Fenster held the New York vagrancy statute (Code Crim. Pro., § 887, subd. 1) unconstitutional.
The provision of the statute which requires defendant to explain himself would appear to be unconstitutional. An accused may remain silent and no penal conclusions flow from this silence. (Escobedo v. Illinois, 378 U. S. 478; Miranda v. Arizona, supra.)
The statute under consideration specifically provides that the policeman must suspect that the loiterer ‘1 may be engaged or about to engage in crime ” (italics supplied). Section 10.00 of the Penal Law defines “ Crime ” in subdivision 6. “ 1 Crime ’ means a misdemeanor or a felony.” Section 230.00 of the Penal Law states ‘‘ Prostitution is a violation.” (Italics supplied.) Since in all of these cases these defendants were suspected by the police to be engaging in prostitution, these were arrests for suspected commission of a “ violation ” and not a “ crime ” and, therefore, are clearly illegal and made contrary to the clear mandate of the loitering statute and in complete violation of the constitutional rights of all of the defendants.
It is a general principle that a law be declared unconstitutional “only as a last resort”. (Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555, affd. 344 U. S. 367; Matter of Roosevelt Raceway v. Monaghan, 9 N Y 2d 293, 303.) In Ashwander v. Tennessee Val. Auth. (297 U. S. 288, 347) Mr. Justice Bbandeis quoted with approval the following:
“ ‘ It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.’ Burton v. United States, 196 U. S. 283, 295.”
It is not necessary to the decision of this case to pass on the constitutional question because these arrests were in connection with a “ violation ” and not a “ crime ”, in contravention of the clear language of the Penal Law section in question.
I, therefore, dismiss all of these informations on the ground that the loitering statute under which these defendants were arrested does not cover “ violations ” but only arrests of those suspected of being about to engage in “ crime.” Arrests of those suspected of engaging in prostitution cannot be made under subdivision 6 of section 240.35 of this statute.
All 41 cases are dismissed.