448 P.2d 195

**STATE of Idaho, Plaintiff-Appellant,**
v.
**Dean BARNEY, Defendant-Respondent.**
**No. 10162.**

Supreme Court of Idaho.
Dec. 6, 1968.

582

Allan G. Shepard, Atty. Gen., and Roger B. Wright, Deputy Atty. Gen., Boise, Roy E. Mosman, Pros. Atty., Lewiston, for plaintiff-appellant.

Jerry V. Smith, Lewiston, for defendant-respondent.

SPEAR, Justice.

On August 7, 1967, Dean Barney was charged by Roy E. Mosman, prosecuting attorney for Nez Perce County, with violation of I.C. § 34–104, an indictable misdemeanor entitled, "Publication or distribution of campaign literature of candidate to bear names of group responsible." The section provides:

"It shall be unlawful to print, permit to be printed, publish or distribute, or cause to be published or distributed, and to transport or cause to be transported, mail or cause to be mailed, any card, pamphlet, circular, poster, dodger, advertisement, writing, or other printed matter relating to or concerning any person who has publicly declared his intention to seek any elective national, state, county, municipal or any other public office in a primary, general, or special election, unless said card, pamphlet, circular, poster, dodger, advertisement, writing or other printed matter, contains and bears on its face the names of the person or persons, association, committee, corporation, or other group responsible for the publication and distribution of the same, and the name of the principal officer of each such association, committee, or corporation, or other group."

The information charged that Dean Barney, on or about November 6th, 1966, did:

"willfully * * * distribute or cause to be distributed a printed circular or poster relating to or concerning * * * Cecil Andrus, who had then publicly declared his intention to seek * * * the office of Governor of the State of Idaho, and that said circular did not contain and bear on its face the names of the person or persons * * * or other group responsible for the publication and distribution of the same."

On September 8, 1967, the defendant filed a demurrer to the complaint which resulted in a dismissal, with prejudice. The district court held:

1. The information was defective in that it did not charge "transportation."

2. The information was not sufficiently definite.

3. I.C. § 34–104 violates freedom of speech and press of the U. S. Constitution.

4. I.C. § 34–104 violates the due process guarantees of the federal and state constitution in that it is unduly vague and makes many innocent acts a crime.

The state excepted to each and every one of these findings. The arguments grounded in due process present the most serious issue and the only one necessary for resolution of this case.

Our research reveals that due process and free speech, although distinct concepts in their own right, have a middle ground where they intertwine. Thus, at one end of a spectrum there is the pure due process concept, a fundamental idea of essential fairness, more basic than even

constitutional authority. This concept is inherent in the statutory interpretation cases such as State v. Burns, 53 Idaho 418, 23 P.2d 731 (1933) and United States v. Evans, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948). See also 109 U.Pa.L.Rev. 67 (1960) citing 21 Mich.L.Rev. 831 (1923). This basic concept provides that a person must know what is expected of him. Next in line comes the constitutional concept of essential fairness which, simply stated, means that a person is entitled to know what is expected of him without being confused by vague and conflicting commands. The third step in the line from due process to free speech is the area where the two unite. Here, the statute, standing by itself, may be within the degree of specificity required by due process, and, the opposing right of free speech may be subject to some degree of proscription. However, although some limitation on speech is permissible, it cannot be accomplished by a somewhat vague statute even though the statute would be sufficiently definite if, for example, it restricted an economic interest. Finally, and on the opposite end of the spectrum, there are areas of free speech which cannot be limited by a particular means, no matter how carefully the statute in question might be drawn.

Vague and indefinite though the steps and the dividing lines between them may be, we find that they present insurmountable obstacles to the statute in question. I.C. § 34–104 stumbles badly on the first step, falls down on the second, and in no event can it overcome the third. Thus, we find it unnecessary to reach the question of whether I.C. § 34–104 represents a permissible restriction on freedom of speech and press.

The first step in testing a statute, pursuant to the due process concept, must be to inquire what conduct is prohibited or required. As respondent's counsel pointed out, the more closely I.C. § 34–104 is read, the more clouded its meaning becomes. The title of the section speaks of "publication or distribution," but the substance of the section speaks of "publishing and transporting." Thus, it cannot be determined whether the one who offends the statute is the one who orders the material, the one who produces the material, or the one who distributes or transports the campaign material; or whether he must commit all three of these acts.

But this vagueness as to persons within the scope of the act is not its only evil. The first part of the statute lists three basic acts in the disjunctive, "printing," "publishing," or "distributing." By adding the connective "and," in the next part, it would appear that the legislative intent was to require, for example, "printing" and "transporting." However, when one looks at the third element of the first part, "distributing," there results the crime of "distributing" and "transporting." In other words, there must be concomitant commission of two analogous acts in order for there to be a violation of this statute. This incongruity could be eliminated by avoiding the usual definition of "distribute" [1] and judicially defining it as some step in the printing process.[2] Then we could determine that the legislative intent was to list three basically synonymous initial acts followed by several alternative final acts, a combination of which would be necessary to perfect the crime. However, this type of judicial gymnastic, if necessary to interpret the statute, is hardly consistent with the requirement of certainty and such strained construction is properly rejected. Pierce v. United States, 314 U.S. 306, 62 S.Ct. 237, 86 L.Ed. 226 (1941); United States v. Evans, supra.

1. "To divide among several or many." Schmeckpeper v. Panhandle Co-op. Ass'n, 180 Neb. 352, 143 N.W.2d 113, 118 (1966).

2. "Distribute * * * 3b(1): to separate the units of (as type set matter or handset matrices) and return to the proper storage places (2) *of a keyboard slug-casting machine:* to return (matrices) automatically to the proper magazine channels." Webster's Third New International Dictionary (1966 ed. by G & C Merriam Co.).

584

On the other hand, if we were to judicially interpret the conjunctive "and" as the disjunctive "or," as urged by the state, the following would each be separate violations: "printing," "publishing," "distributing," "transporting," or "mailing." Although this construction would make more sense, the scope of prohibited activities would be startling, to say the least. It would then appear by the terms of the statute that every person having any contact with the campaign literature, would be susceptible of prosecution.

A practical example of the confusion and misunderstanding occasioned by I.C. § 34–104 is represented in this case. The defendant was charged with unlawful "distribution" of a poster without designation of who had printed it. The trial court found the information invalid because it did not charge "transportation or mailing." As a further example of confusion, both the party who swore out the complaint and the prosecutor have distributed unsigned campaign materials, according to respondent's counsel. For that matter, respondent's counsel himself admits such anonymous distribution. Either this law is violated with impunity, or there is severe misunderstanding of its terms.

■ When a statute is subject to several varying and conflicting constructions, it will not stand, whether it be a federal statute such as that in United States v. Evans, supra, or a state statute such as that in State v. Burns, supra. The statute is held invalid, being void for vagueness, without mention of constitutional due process guarantees.

In United States v. Evans the defendants were indicted for violating a provision of the Immigration Act of 1917. That act initially prohibited bringing aliens into the United States and provided a fine for each alien brought in. A subsequent amendment prohibited the harboring of aliens, but the penalty clause was not amended. The Su-

preme Court rejected the government's argument for a reconstruction of the statute to apply the penalty to the appended violation. After an analysis of the history and language of the act, the Supreme Court held the government's construction of the statute was only one of several permissible constructions. The act, as it stood, was so ambiguous that any resolution of its terms would constitute "guesswork." The indictments were dismissed without any reference to the constitutional requirements of due process.

A similar approach was taken by the Idaho court in State v. Burns, supra. In that case the statute made it a larcenous crime for any attorney to refuse or neglect to pay over any sums collected for his client. The court pointed out four of the possible interpretations to which the act was subject, and concluded that the act was "void for uncertainty," again without reference to due process guarantees of either the state or federal constitutions. The court reasoned as follows:

"An act of the Legislature creating a statutory offense should define the acts necessary to constitute such offense with such certainty that a person may determine whether or not he has violated the law at the time he does the act, which is charged to be a violation thereof. * * *

"It is difficult, if not impossible, to determine with any certainty just what an attorney employed to make a collection, may lawfully do under the statute in question, and equally impossible to determine just what it is unlawful for an attorney to do. The most scrupulous lawyer, or collector could easily be trapped in the net of uncertainties present in the statute. The liberty of the citizen cannot be so imperiled."

Under constitutional guarantees of due process, many types of vagaries will void the statute.[3] But the real vice of vague-

3. *Conflicting commands*, State v. Hill, 189 Kan. 403, 369 P.2d 365, 91 A.L.R.2d 750 (1962); United States v. Laub, 385

U.S. 475, 87 S.Ct. 574, 17 L.Ed.2d 526 (1967). *Or vague, undefined words*, United States v. L. Cohen Grocery, 255

ness in criminal statutes such as I.C. § 34–104 is "the treachery they conceal either in determining what persons are included or what acts are prohibited." United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200 (1952). As previously pointed out, this statute does not state whether printers or truckers are included or excluded, or what act or combination of acts is necessary for its violation.

■ Finally, it is abundantly clear that I.C. § 34–104 is too vague to stand as a permissible restriction on the free exercise of speech and press. Where prohibited conduct approaches the exercise of First Amendment freedoms, due process requirements are even more narrowly scrutinized. Scull v. Commonwealth of Virginia, 359 U.S. 344, 79 S.Ct. 838, 3 L.Ed.2d 865 (1959). Words must be explicitly defined. Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939) (gangs); State v. Diamond, 27 N.M. 477, 202 P. 988, 20 A.L.R. 1527 (1921) (incite, revolution). Additionally, if a statute as a whole is too broad in its proscriptions, so as to include innocent as well as prohibited conduct, it is invalidated in its entirety.[4] Under this

statute distribution of what might be considered a spurious political pamphlet in one person's mind might, in another person's mind, be viewed as sharing a monumental literary effort.

The leading case in the due process-free speech area is Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948). In *Winters* the defendant was convicted of a violation of New York's "Obscene prints and articles" law.[5] The obscene material he was accused of distributing consisted of accounts of gruesome criminal acts. The New York Court of Appeals had held the material was sanctionable under the statute as a "massing of stories of bloodshed and lust in such a way as to incite to crime against the person." The United States Supreme Court held that the New York legislature had the power to interdict such literature, but the court went on to hold that the legislature had not done so in *Winters* with the precision required by the First Amendment:

"The principle of a free press covers distribution as well as publication. * * It is settled that a statute so vague and indefinite, in form and as interpreted,

U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516 (1921) ("unreasonable"); State v. Pigge, 79 Idaho 529, 322 P.2d 703 (1957) ("negligent"); Musser v. Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1948) ("injurious to public health, morals, trade, commerce, justice, or order"). *Or where an innocent act is made criminal*, Kahalley v. State, 254 Ala. 482, 48 So.2d 794 (Ala.1950).

4. In ex parte Bell, 19 Cal.2d 488, 122 P.2d 22 (1942), section 2 of an anti-picketing ordinance read: it shall be a crime "for any person to loiter, stand or sit upon any public highway, alley or crosswalk so as to in any manner hinder or obstruct the free passage * * * of persons or vehicles * * *" In invalidating the act, the court said, "This language encompasses conduct that is well within the bounds of peaceful picketing sanctioned by the guarantees of due process of law. Thus a picket may be peaceful even though he loiters, stands, or sits upon a public highway, alley, sidewalk or crosswalk, and thereby constitutes to some extent an obstruction to

the free passage of persons and vehicles or an annoyance to persons who do not approve his presence. [cites] The sweeping prohibition of section 2 would apply equally against peaceful pickets, shoppers engrossed in window display, invalids in wheelchairs, acquaintances who stand engaged in conversation. The entire section is therefore invalid even though Yuba County might validly prohibit excessive and unnecessary obstruction of the streets and highways."

5. 1. A person * * * who, 2. Prints, utters, publishes, sells, lends, gives away, distributes or shows, or has in his possession with intent to sell, lend, give away, distribute or show, or otherwise offers for sale, loan, gift or distribution, any book, pamphlet, magazine, newspaper or other printed paper devoted to the publication, and principally made up of criminal news, police reports, or accounts or criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime; * * * Is guilty of a misdemeanor * * *"

as to permit within the scope of its language the punishment of incidents fairly within the protection of the guarantee of free speech is void, on its face, as contrary to the Fourteenth Amendment. [Cites] A failure of a statute limiting freedom of expression to give fair notice of what acts will be punished and such a statute's inclusion of prohibitions against expressions, protected by the principles of the First Amendment, violates an accused's rights under procedural due process and freedom of speech and press."

The court then pointed out its specific objections:

"Even though all detective tales and treatises on criminology are not forbidden, and though publications made up of criminal deeds not characterized by bloodshed or lust are omitted from the interpretation of the Court of Appeals, we think fair use of collections of pictures and stories would be interdicted because of the utter impossibility of the actor or the trier to know where this new standard of guilt would draw the line between the allowable and the forbidden publications. No intent or purpose is required —no indecency or obscenity in any sense heretofore known to the law."

Here, as in *Winters*, we believe that the fair use of printed material is interdicted because our statute does not make clear what conduct is subject to the statute's sanctions. I.C. § 34–104 has an even greater failing in that it does not clearly indicate *who* is subject to its sanctions. "It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against." United States v. L. Cohen Grocery, 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516 (1921).

I.C. § 34–104 violates due process and cannot therefore constitute a valid inhibition on the exercise of First Amendment guarantees of speech and press.

In reaching this conclusion, we are not unmindful of the excellent briefs counsel for both parties have submitted to develop the question of whether statutes such as I.C. § 34–104 can constitute a valid restriction on the dissemination of campaign literature.[6] As the state's attorney pointed out, statutes such as I.C. § 34–104 have many important policy considerations behind them, such as identification of a libelant and enabling the public to judge a statement by its sources. The policies which gave rise to statutes such as these should not be dismissed without first giving the legislature of the State of Idaho an opportunity to present a more concise statement on the subject, consistent with the view expressed herein, and with the views expressed in Zwickler v. Koota, 290 F.Supp. 244 (D.C.1968). In the event the U. S. Supreme Court affirms the *Zwickler* decision on the same grounds used in the lower court, a statute such as I.C. § 34–104 will be deemed unconstitutional under the free speech and press provisions of the Constitution of the United States, and just as surely, the Constitution of Idaho. See Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 563 (1960).

Therefore the drafting of any new legislation in lieu of I.C. § 34–104, should the same be desired, should be delayed until the *Zwickler* case has been decided. In all probability that case will be argued some time this month before the U. S. Supreme Court.

Judgment affirmed. Costs to respondent.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.

---

6. Much reliance was placed by the court below and by the respondent on Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960). However, the result which we reach, although similar to *Talley* is distinguishable. In *Talley* the statute in question was clear and all-encompassing. It prohibited distribution of any handbill of any type in any place under any circumstances. The statute in *Talley* was too broad, rather than too vague, as is the case with our statute.